IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

      v.
                                    Criminal No. 3:22cr52 (DJN)

DAVID LAVELL MORGAN,
     Defendant.

**MEMORANDUM OPINION**
**(Establishing Mandatory Minimum and Maximum)**

This matter comes before the Court on Defendant David Lavell Morgan's Motion to

Establish Statutory Maximum and Mandatory Minimum (the "Motion"). (ECF No. 28.) The

Government responded, (ECF No. 37), and Defendant replied, (ECF No. 39). Therefore, the

Motion stands ripe for disposition.[1] For the reasons set forth below, the Court GRANTS

Defendant's Motion to the extent that it will determine whether Defendant's three prior

convictions, as identified in the Superseding Indictment (ECF No. 25), constitute "serious drug

offenses" under the Armed Career Criminal Act ("ACCA"). The Court further determines that

Defendant's three prior state drug convictions do indeed constitute "serious drug offenses" under

the ACCA, and thus the Court DENIES Defendant's Motion to the extent that he seeks a ruling

otherwise.

---

[1]     Having reviewed the pleadings, the Court finds that oral argument will not aid the
decisional process and therefore cancels the oral argument previously scheduled for September
29, 2022.

## I.       BACKGROUND

### A.       Factual Background

The pertinent facts in this case are brief and undisputed.[2]  At all times relevant,

Defendant's prior convictions included at least one felony conviction in Richmond City Circuit

Court of a crime punishable by imprisonment for a term exceeding one year.  (Aff. Supp. Crim.

Compl. ("Aff.") ¶ 12 (ECF No. 1).)

On January 29, 2022, at approximately 12:50 p.m., Henrico County Police Department

("HCPD") officers arrived at the 100 block of Engleside Drive in the County of Henrico,

Virginia (the "Essex Village Apartments") to execute an outstanding felony arrest warrant for

Defendant, on file with HCPD through the Richmond City Police Department.  (Govt.'s Resp.

Def.'s Mot. ("Resp.") at 1 (ECF No. 37).)  After observing Defendant exit and re-enter the

apartment building registered as his home address, HCPD officers established surveillance on the

building and began monitoring its breezeway.  (Resp. at 1.)

An hour-and-a-half later, at approximately 2:20 p.m., Defendant exited the apartment

building.  (Resp. at 2.)  HCPD officers approached Defendant, confirmed his identity, and

arrested him pursuant to the outstanding warrant.  (Resp. at 2.)  While detained, Defendant

informed HCPD officers that he possessed a firearm on his person.  (Resp. at 2.)  The officers

searched Defendant and recovered a loaded 9mm Beretta pistol.  (Resp. at 2.)  Upon arrest,

Defendant acknowledged his status as a convicted felon.  (Resp. at 2.)

### B.       Procedural History

On May 3, 2022, a federal grand jury in the Eastern District of Virginia indicted

---

[2]       The Court recites these facts for background purposes only.  The Court need not and does not resolve any factual disputes or accept facts in any party's favor.

Defendant under 18 U.S.C. § 922(g)(1), which prohibits the possession of a firearm by an individual "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). On August 2, 2022, the Government filed a Superseding Indictment, providing notice of the Government's intent to seek a sentencing enhancement under § 924(e), the ACCA. (ECF No. 25.)

In the Superseding Indictment, the Government identified the three prior offenses based upon which it intends to seek a sentencing enhancement. (Super. Indict. ¶ 2 (ECF No. 25).) Those offenses are:

(1)     a 2006 conviction for Possession of Heroin with Intent to Distribute (in violation of Va. Code § 18.2-248);

(2)     a 2009 Conviction for Possession of Cocaine with Intent to Distribute (in violation of Va. Code § 18.2-248); and

(3)     a 2015 Conviction for Possession of a Controlled Substance with intent to Distribute – 2nd Offense (in violation of Va. Code § 18.2-248).

On August 7, 2022, Defendant moved this Court to determine whether Defendant's prior convictions, as identified in the Government's Superseding Indictment, constitute "serious drug offenses" such that the convictions establish the ACCA's applicability and subject Defendant, if convicted, to a fifteen-year mandatory minimum sentence. (ECF No. 28.) The Court now addresses Defendant's Motion.

## II.     LEGAL STANDARD

The Government bears the burden of proving an Armed Career Criminal Act predicate offense by a preponderance of the evidence. *United States v. Harcum*, 587 F.3d 219, 222 (4th Cir. 2009). The Court finds that the Government has met its burden here as to the three prior state drug convictions listed in the Superseding Indictment.

### III.   ANALYSIS

Defendant contends that a conviction under Virginia Code Section 18.2-248 cannot qualify as a predicate offense under the ACCA, because § 18.2-248 is overbroad with respect to both the conduct and the substances that it criminalizes.  (Def.'s Mot. ("Mot.") at 7-32.) Defendant also contends that because the judicially noticeable documents related to his 2015 conviction do not identify a federally controlled substance, the 2015 conviction that the Government lists in its Superseding Indictment cannot qualify as a predicate ACCA offense. (Mot. at 33-35.)  As detailed below, the Court finds that Defendant's arguments fail under binding Fourth Circuit and Supreme Court precedent.  Because the convictions that the Government identifies in the Superseding Indictment qualify as predicate offenses under the ACCA, the Court holds that, should Defendant be convicted under § 922(g), the ACCA's fifteen-year mandatory minimum will apply.  § 924(e)(1).

#### A.   Legal Framework

##### i.   The Armed Career Criminal Act

The Armed Career Criminal Act mandates a fifteen-year minimum prison sentence for an individual convicted of unlawful possession of a firearm who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  In pertinent part, the ACCA defines a "serious drug offense" as:

> [A]n offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii).  Section 802 of Title 21, United States Code, defines a controlled substance as "a drug or other substance, or immediate precursor, included in schedule I, II, III,

4

IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Finally, schedules I and II include heroin and cocaine, respectively, among their listed substances. Schedule II defines cocaine in 21 C.F.R. § 1308.12(b)(4) as "cocaine . . . and [its] salts, isomers, derivatives and salts of isomers and derivatives . . . ." While schedule I does not define heroin, it includes "its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation" among its listed substances. 21 C.F.R. § 1308.11(c)(11).

###    ii.    The Basic Two-Step Analysis

To determine whether a defendant's prior state law conviction constitutes a "serious drug offense," Supreme Court and Fourth Circuit precedents compel a two-step analysis. *Shular v. United States*, 140 S. Ct. 779, 784 (2020); *United States v. Hope*, 28 F.4th 487, 496 (4th Cir. 2022). First, the sentencing court must determine the elements of the predicate offense of which the defendant was previously convicted. *Hope*, 28 F.4th at 496. Second, the court must compare those elements with the ACCA's definition of "serious drug offense" and determine whether the predicate offense "necessarily entail[s] one of the types of conduct" set forth in the ACCA's definition. *Shular*, 140 S. Ct. at 784.

Put differently, the court "compare[s] the elements of the state offense with the criteria that the ACCA uses to define 'a serious drug offense.'" *Hope*, 28 F.4th at 496 (citing *Shular*, 140 S. Ct. at 780). From there, the court "consider[s] whether the prior state convictions 'qualif[y] as . . . predicate[s],' which is so 'only if [each] statute's elements are the same as, or narrower than, those of [the relevant federal definition].'" *Id.* (citing *Descamps v. United States*, 570 U.S. 254, 257 (2013)). Courts employ the categorical approach in conducting this analysis. *Id.*

### iii.   Categorical and Modified Categorical Approach

Before employing the categorical approach, the sentencing court must first determine the type of state statute that the Government identifies as the predicate offense — "indivisible" or "divisible." *United States v. Allred*, 942 F.3d 641, 647-48 (4th Cir. 2019). "Where the criminal statute at issue is indivisible, that is it 'sets out a single . . . set of elements to define a single crime,' . . . the categorical approach [applies]." *Id.* at 647 (quoting *Mathis v. United States*, 579 U.S. 500, 504-05 (2016)). "Alternatively, the modified categorical approach applies where the prior conviction at issue is for violation of a 'divisible' statute." *Id.* at 648 (quoting *Descamps*, 570 U.S. at 257). A divisible statute "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis*, 579 U.S. at 505.

Upon finding a statute indivisible, the court undertakes the categorical approach and analyzes the predicate statute(s) without reference to the particular facts underlying the defendant's prior convictions. *Allred*, 942 F.3d at 647. The court looks "only to the fact of conviction and the statutory definition of the [predicate offense] to determine whether the offense" constitutes a "serious drug offense" under the ACCA. *Harcum*, 587 F.3d at 222. To do so, the sentencing court juxtaposes the predicate offense's elements with the ACCA's definition of "serious drug offense" and decides whether the state statute's elements "necessarily entail one of the types of conduct" set forth in the ACCA's definition. *Shular*, 140 S. Ct. at 784; *see also Hope*, 28 F.4th at 496-97 ("[I]f the least culpable conduct [the statute punishes] falls within the ACCA's definition of 'a serious drug offense,' then the statute categorically qualifies as a serious drug offense. But if the least culpable conduct falls outside that definition, then the statute is too broad to qualify.").

If the court finds the statute divisible, it applies the modified categorical approach, which allows it to distill the statute to the indivisible crime at issue before embarking on the categorical analysis. *Allred*, 942 F.3d at 648. The sentencing court "determine[s] which statutory phrase was the basis for the conviction by consulting the trial record." *United States v. Cruz*, 469 F. App'x 161, 164 (4th Cir. 2012). In other words, the court "go[es] beyond the scope of the categorical approach and assess[es] the underlying charging documents . . . to ascertain whether the offense qualifies as an ACCA predicate offense." *Harcum*, 587 F.3d at 223. Critically, the sentencing court's analysis surveys a limited universe of judicial record documents — colloquially, the *Shepard* documents — to determine "what crime, with what elements, a defendant was convicted of." *Mathis*, 579 U.S. at 505-06. The *Shepard* documents include, *inter alia*, the indictment, jury instructions and plea agreement or colloquy. *Id.* at 505.

The modified categorical approach merits two points of emphasis. First, the modified categorical approach *is not an alternative* to the categorical approach, but exists simply to "help[] effectuate the categorical analysis." *Descamps*, 570 U.S. at 260. That is, the modified categorical analysis serves as a "tool" to implement the categorical analysis where "a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Id.* Once the modified categorical analysis concludes and the court "isolate[s] the specific crime underlying the defendant's conviction, [the court] must then apply the categorical approach to that crime to determine if it constitutes a [serious drug offense]." *Allred*, 942 F.3d at 648.

Second, the modified categorical approach demands caution when the underlying conviction resulted from a plea. *United States v. Alston*, 611 F.3d 219, 224-25 (4th Cir. 2010). When reviewing such a conviction under the modified categorical approach, the sentencing court

7

may examine only "the terms of the charging document, the terms of a plea agreement or

transcript of colloquy between judge and defendant in which the factual basis for the plea was

confirmed by the defendant, or [] some comparable judicial record of this information." *Shepard*

*v. United States*, 544 U.S. 13, 26 (2005). If allowed to consult material outside this limited

universe, the sentencing judge would, improperly, "assess[] whether a prior conviction counts as

an ACCA predicate conviction by relying on facts neither inherent in the conviction nor admitted

by the defendant." *Alston*, 611 F.3d at 226. The court narrows its reach in these circumstances

to (1) protect the defendant's Sixth Amendment right to trial by jury and (2) avoid collateral

trials of earlier convictions. *Shepard*, 544 U.S. at 23-26.

### iv.   Summary

Having recited the applicable law, its complexity warrants a brief summary. First, as a

threshold matter, the sentencing court determines whether the statute underlying the defendant's

prior conviction is divisible or indivisible. *Allred*, 942 F.3d at 649. The Court will refer to this

as Step Zero.

Second, in what the Court will call Step One, the sentencing court identifies the elements

of the predicate offense. *Hope*, 28 F.4th at 496. The court completes Step One in one of two

ways. Faced with a divisible statute, the court applies the modified categorical approach and

determines the elements that form the basis of the defendant's prior conviction by analyzing

appropriate documents in the record. *Bah v. Barr*, 950 F.3d 203, 206-07 (4th Cir. 2020). For

indivisible statutes, the court identifies the elements of the predicate offense by reference to the

state statute alone. *Id.* at 206.

Finally, at Step Two, having applied either the categorical or modified categorical

approach to identify the state statute's elements, the sentencing court then compares the elements

of the defendant's prior conviction against the ACCA's definition of "serious drug offense." *Hope*, 28 F.4th at 496. If the state statute's elements "are the same as, or narrower than, [the ACCA's]," then the prior state conviction qualifies as predicate offense. *Id.* On the other hand, if the prior state offense punishes "a greater swath of conduct" than the ACCA, then that crime cannot qualify as a predicate offense. *Id.*

**B.      Defendant's Prior Convictions Constitute Predicate Offenses under the ACCA**

Against this legal backdrop, the Court now turns to consider whether Defendant's prior convictions under Virginia Code Section 18.2-248 constitute, as the Government contends, "serious drug offenses" pursuant to the ACCA's definition of the term. Critically, "[t]he Government bears the burden of proving an ACCA predicate offense by a preponderance of the evidence." *Harcum*, 587 F.3d at 222. Nonetheless, as Defendant, not the Government, brings the instant Motion, the Court frames its analysis with Defendant's arguments as guideposts.

Broadly, Defendant makes three arguments. First, employing the categorical approach, Defendant argues that § 18.2-248 punishes a greater swath of **conduct** than § 924(e)(2)(A)(ii) captures in its definition of "serious drug offense." (Mot. at 7-30.) Because it includes attempts and broader accomplice liability, Defendant contends that § 18.2-248 categorically exceeds the ACCA in scope, and Defendant's prior convictions under the statute therefore cannot constitute ACCA predicate offenses.

Second, again analyzing § 18.2-248 under the categorical approach, Defendant argues that § 18.2-248 captures heroin and cocaine isomers in its definition of "controlled substance" that the ACCA excludes from its definition of the same term. (Mot. at 30-32.) Thus, Defendant contends that § 18.2-248 punishes the manufacture, sale, distribution and possession of certain

**substances** that the ACCA does not — the upshot, of course, being that § 18.2-248 offenses cannot serve as an ACCA predicate. (Mot. at 30-32.)

Finally, Defendant argues in the alternative that, even if the Court finds § 18.2-248 divisible by substance and therefore applies the modified categorical approach, Defendant's 2015 conviction cannot serve as an ACCA predicate offense. (Mot. at 33.) Because he pled *nolo contendere* to his 2015 indictment for possession of a controlled substance with intent to distribute, Defendant argues that the limited universe of judicially-noticeable documents that the Court may consider under the modified categorical approach precludes a finding that Defendant possessed a "controlled substance" as defined by the ACCA. (Mot. at 33-34) (citing *Alston*, 611 F.3d at 224-25).

The Court considers each argument in turn and, for the reasons set forth below, finds that none avail Defendant's cause. Because Defendant's three prior convictions under § 18.2-248 all fall within the ACCA's definition of a "serious drug offense," the Court holds that, should Defendant be found guilty of the § 922(g) charges brought in the instant case, the ACCA's fifteen-year mandatory minimum sentence will apply at sentencing.

      **i.**    **Examined Using the Categorical Approach, § 18.2-248 Constitutes a Predicate "Serious Drug Offense" Under the ACCA With Respect to Its Conduct Element**

Defendant first argues that § 18.2-248 categorically exceeds the ACCA's definition of a "serious drug offense," because the least culpable conduct that § 18.2-248 punishes need not "necessarily entail" the manufacture, distribution, or possession with intent to manufacture or distribute a controlled substance. (Mot. at 7-30) (citing *Shular*, 140 S. Ct. at 784). Thus, pursuant to *Shular*, Defendant contends that none of Defendant's convictions under § 18.2-248 constitute an ACCA predicate offense. (Mot. at 7-30.) Defendant articulates this argument through two examples.

First, Defendant contends that § 18.2-248 punishes, at its outermost limit, the attempted transfer of a controlled substance. (Mot. at 8-9.) Employing the categorical approach, Defendant compares § 18.2-248 to the ACCA's definition of "serious drug offense" and finds that the attempted transfer of a controlled substance need not "necessarily entail" the manufacture, distribution, or possession with intent to manufacture or distribute a controlled substance. (Mot. at 10-13) (citing *Shular*, 140 S. Ct. at 783; *United States v. Campbell*, 22 F.4th 438, 442 (4th Cir. 2022)). Because § 18.2-248 therefore punishes conduct outside the ACCA's definition of "serious drug offense," Defendant maintains that the Court cannot predicate an ACCA sentencing enhancement on a prior § 18.2-248 conviction.

Second, Defendant asserts that Virginia's theory of accomplice liability, upon which a Va. Code § 18.2-248 conviction may be premised, "allows convictions based on presence, knowledge, and failure to act." (Mot. at 28.) Comparing Virginia's theory of accomplice liability to "generic aiding and abetting," the theory of accomplice liability applicable under the ACCA, Defendant claims that Virginia punishes conduct categorically "outside" that punished by the generic offense. (Mot. at 28.) It follows, Defendant concludes, that "the overbreadth of aiding and abetting liability for violations of § 18.2-248 take[s] the statute outside of . . . a generic controlled substance offense." (Mot. at 30.) An § 18.2-248 conviction therefore cannot, in Defendant's telling, constitute a predicate offense under the ACCA. (Mot. at 30.)

Both of the above arguments fail under the Supreme Court's holding in *Shular*. 140 S. Ct. at 785. Because all three of the prior convictions that the Government identifies fall under Virginia Code Section 18.2-248, the Court's analysis here (and in Section II.A.ii.) applies with equal force across all three convictions.

Following the legal framework outlined in Section III.A., the Court begins by addressing

11

§ 18.2-248's divisibility (Step Zero). *Allred*, 942 F.3d at 649.  Here, the parties concur with the

Virginia Supreme Court's holding in *Stillwell v. Commonwealth* that § 18.2-248 "creates . . . a

single offense" and is therefore indivisible with respect to its "act" or "conduct" element.

*Stillwell v. Commonwealth*, 219 Va. 214, 222 (1978).  Thus, the parties agree that the Court need

not apply the modified categorical analysis.

     Next, at Step One, the Court must identify the elements of the relevant state statute.

*Hope*, 28 F.4th at 496.  Defendant's prior convictions fall under Virginia Code § 18.2-248, which

makes it "unlawful for any person to manufacture, sell, give, distribute, or possess with intent to

manufacture, sell give or distribute a controlled substance or an imitation controlled substance."

Simply put, "the elements of a violation of § 18.2-248 require [the prosecution prove] that the

defendant committed one of the actions — manufacture, sell, give, distribute, or possess with

intent to manufacture, sell, give, or distribute — with an identified controlled substance." *United

States v. Ward*, 972 F.3d 364, 369 (4th Cir. 2020).  Neither party disputes the elements of the

offense.

     Finally, in Step Two, the Court lines up § 18.2-248's elements with the ACCA's

definition of a "serious drug offense" and determines whether "the most innocent conduct that

[§ 18.2-248] criminalizes" necessarily involves one of the types of conduct identified in

§ 924(e)(2)(A)(ii). *Allred*, 942 F.3d at 648.  Here, Defendant's argument takes center stage.

Defendant provides two examples of what he believes constitutes the least culpable conduct that

§ 18.2-248 punishes. (Mot. at 7-30.)  First, § 18.2-248 criminalizes the attempted transfer of a

controlled substance. (Mot. at 7-16.)  Second, through the application of Virginia's theory of

aiding and abetting liability, § 18.2-248 punishes an individual's acquiescence to the

manufacture, sale or distribution of a controlled substance when the individual is present in the

place where such conduct occurs and aware that such conduct transpires.  (Mot. at 16-30.)

Neither course of conduct, Defendant argues, "necessarily entail[s]" the manufacture,

distribution, or possession with intent to manufacture or distribute a controlled substance.

*Shular*, 140 S. Ct. at 784.  The Court addresses Defendant's examples in turn.

### *Attempted Transfer of a Controlled Substance*

Though he correctly notes that § 18.2-248 criminalizes the attempted transfer of a

controlled substance, Defendant fails to establish that attempted transfers need not involve the

manufacture, distribution, or possession with intent to manufacture or distribute a controlled

substance.  To the contrary, the Court finds that the attempted transfer of a controlled substance

necessarily involves the conduct identified in § 924(e)(2)(A)(ii).

First and foremost, the Fourth Circuit, in concert with many of its sister circuits,

maintains that attempt crimes "involve" the manufacture, distribution, or possession with intent

to manufacture or distribute a controlled substance. *See, e.g.*, *United States v. Williams*, 468 F.

App'x 343, 347 (4th Cir. 2012) (citing *United States v. Alexander*, 331 F.3d 116, 130-31 (D.C.

Cir. 2003) and *United States v. King*, 325 F.3d 110, 113-14 (2d Cir. 2003)).  Moreover,

Congress' use of "involving" in § 924(e)(2)(A)(ii) "suggests that the subsection should be read

expansively." *United States v. Brandon*, 247 F.3d 186, 190 (4th Cir. 2001).

Defendant argues that the Supreme Court's 2020 decision in *Shular* narrowed the

expansive reading of the term "involving" endorsed in *Brandon* and elsewhere.  (Mot. at 10.)  In

support of this argument, Defendant cites the Solicitor General's remarks at oral argument.

(Mot. at 10.)  The definition of the term "involving," however, was not the question presented in

*Shular*, and nowhere in *Shular*'s text does the Supreme Court suggest that it understands its

decision as narrowing or altering the meaning of "involve." *Shular*, 140 S. Ct. at 782.  Rather,

the *Shular* Court decided "what the [sentencing] court should measure [the state offense's] elements against" when applying the involving standard. *Id.* And, as Defendant helpfully points out, the Solicitor General's colloquy with Justices Alito and Kavanaugh underscores the fact that the Supreme Court did not conclusively resolve the meaning of "involving." Transcript of Oral Argument at 54-55, *Shular v. United States*, 140 S. Ct. 779 (2020).

   *United States v. Campbell*, the principal case upon which Defendant relies, lends little support to his argument. 22 F.4th at 445. *Campbell* addressed neither Virginia Code § 18.2-248 nor the Armed Career Criminal Act. *Id.* Rather, *Campbell* concerned whether the commission of an attempt crime under West Virginia law constitutes a "controlled substance offense" for purposes of the career offender sentencing enhancement under U.S.S.G. § 4B1.1(a)(3). *Id.* Thus, as a matter of statutory interpretation, Defendant errs in asserting that *Campbell* controls the Court's analysis in the instant case.

   Putting aside its direct inapplicability, *Campbell*'s logic, when transposed to the instant case, lacks persuasive force as well. U.S.S.G. § 4B1.1(a)(3) provides for a sentencing enhancement where "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The Guidelines go on to define a "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

   In *Campbell*, the Fourth Circuit found that the defendant's prior conviction under a West Virginia law that criminalized the attempted transfer of a controlled substance could not qualify as a "controlled substance offense" under U.S.S.G. § 4B1.1(a)(3). 22 F.4th at 441. In so

14

holding, the Fourth Circuit conducted a relatively straightforward analysis. *Id.* "U.S.S.G. § 4B1.2(b) itself," the court observed, "provides that 'controlled substance offense' means a detailed series of offenses, and attempt crimes do not appear within that definition." *Id.* at 445. Given their conspicuous absence, "traditional tools of construction — and common sense — dictate" that § 4B1.2(b) excludes attempt crimes. *Id.*

As Defendant correctly points out, *Campbell* shares key features with the instant case — most importantly, a categorical comparison between a state statute that punishes attempt crimes and a sentencing enhancement definition of predicate offenses that makes no mention of "attempts." (Mot. at 11.) Defendant missteps, however, when he claims that the "ACCA's language is materially the same" as the § 4B1.2(b) definition of "controlled substance offense." (Mot. at 11.)

While § 4B1.2(b) shares many terms with § 924(e)(2)(A)(ii), such superficial similarity fails to render the statutes "materially the same." Critically, § 4B1.2(b) contains a list of *offenses*, while § 924(e)(2)(A)(ii) "refers to *conduct*." *Shular*, 140 S. Ct. at 785. The *Campbell* Court's analysis of whether an attempt crime falls within § 4B1.2(b)'s list of offenses therefore helps little when the Court in the instant case must decide whether an attempt crime "involves" certain conduct. *Id.*

Moving past *Campbell*, the hypotheticals that Defendant raises in his Motion only serve to illustrate and reinforce the Court's finding that the attempted transfer of a controlled substance "include[s] as a necessary circumstance, condition, or consequence" the conduct identified in § 924(e)(2)(A)(ii). *Id.* (quoting Random House Dictionary of the English Language 1005 (2d ed. 1987)). For example, Defendant states that "[a] delivery driver does not distribute a package by going to a house, knocking on the door, and then leaving with the package when no one

15

answers." (Mot. at 14-15.)  True enough.  However, that same delivery driver, in attempting to deliver the package, undertook a course of conduct that necessarily involves the "possess[ion] with intent to . . . distribute" the package.  § 924(e)(A)(2)(ii).

Defendant's second hypothetical encounters the same issue.  Yes, "[a] person does not distribute an email by clicking 'send' when the e-mail is too big and returned undeliverable." (Mot. at 15.)  Nonetheless, that person's attempted dispatch necessarily involved her possession of the e-mail "with intent to . . . distribute" it.  § 924(e)(2)(A)(ii).

Pursuant to *Brandon*, *Williams*, and persuasive precedent outside the Fourth Circuit, the Court finds that the attempted transfer of a controlled substance necessarily involves the possession of a controlled substance with the intent to distribute.  *Williams*, 468 F. App'x at 346-47 (citing *Brandon*, 247 F.3d at 188).  Accordingly, the Court rejects Defendant's argument that Va. Code § 18.2-248 categorically exceeds § 924(e)(2)(A)(ii) in scope by punishing attempt offenses.

### *Aiding and Abetting Liability*

Defendant's argument concerning Virginia's theory of accomplice liability largely misses the mark, and the Court rejects it in finding that aiding and abetting the commission of a crime under § 18.2-248 necessarily involves the conduct spelled out in § 924(e)(2)(A)(ii).

Defendant dedicates ten pages to a discussion of why aiding and abetting liability in Virginia exceeds "generic accomplice liability."  (Mot. at 18-28.)  As the Government rightly points out, "the Supreme Court expressly rejected that approach" to determining what can qualify as a predicate offense under the ACCA in *Shular*.  (Govt.'s Resp. Mot. at 7.)  Thus, Defendant's argument concerning generic accomplice liability helps his cause none.  *Shular*, 140 S. Ct. at 785.

16

In contrast with Defendant's framing, the question that the Court must answer is this: under Virginia law, does aiding and abetting the commission of a § 18.2-248 offense necessarily involve the manufacture, distribution, or possession with intent to manufacture or distribute a controlled substance? *Id.* The Court answers this question in the affirmative.

Virginia law "recognize[s] that one who is present at a crime and does not oppose it can be guilty of aiding and abetting if the existence of other circumstances allow the fact finder to infer that the accused assented to and lent his countenance and approval to the crime." *Dunn v. Commonwealth*, 665 S.E.2d 868, 871 (Va. App. 2008).[3] These circumstances might include, for example, a defendant's "consent to [] drug sales in her home, [] reliance on . . . income from the [drug] sales for her livelihood, and [] reliance on . . . pinches from the [drugs] to support her own drug habit." *See id.* at 872 (affirming defendant's conviction for aiding and abetting the possession of controlled substances with intent to distribute). Critically for the Court's purposes here, one who aids and abets the commission of a crime "may be indicted, tried, convicted, and punished in all respects" as if he committed the substantive crime at issue. *Ward v. Commonwealth*, 138 S.E.2d 293, 296 (Va. 1964).

Federal law treats aiders and abettors similarly, and the Fourth Circuit's decision in *Ali* provides a helpful analogy to the case at bar. *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021). Federal law provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18

---

[3]    Defendant understates the level of involvement required for aiding and abetting liability in Virginia. (Mot. at 24-28.) Rather than presence alone sufficing, all of the cases that Defendant cites state that Virginia requires additional circumstances that lead to the inference that the aider or abettor "lent his countenance and approval to the crime." *Dunn*, 665 S.E.2d at 871. Thus, Virginia requires a level of involvement beyond what Defendant describes. *Id.* This alone dooms Defendant's argument. Nonetheless, the Court takes up Defendant's argument under the categorical analysis as well.

U.S.C. § 2.  Thus, these actions "simply describe[] the way in which a defendant's conduct resulted in the violation of a particular law." *Ali*, 991 F.3d at 574.  In *Ali*, the Fourth Circuit determined that "aiding and abetting a crime of violence [under the Hobbs Act] is also categorically a crime of violence." *Id.*  It reached this decision on the grounds that "since the law generally treats aiders and abettors the same as principals, the categorical approach must as well." *Id.* at 573.  The Fourth Circuit noted that the decision brought it in line with its sister circuits who have considered the issue.  *Id.* at 574 (collecting cases).

Interpreting Virginia law in concert with the Fourth Circuit's reasoning in *Ali*, so long as the substantive offense described in § 18.2-248 qualifies as a "serious drug offense" (i.e., the substantive offense involves the manufacture, distribution, or possession with intent to manufacture or distribute a controlled substance), then aiding and abetting that offense qualifies as a "serious drug offense" as well.  *Id.*  ("[I]t is impossible for the [categorical] analysis of aiding and abetting a crime to come out differently than the principal crime.").

At this point, the analysis merges with the Court's discussion, *supra*, of attempt crimes.  Applying the categorical approach, the Court identifies "the least culpable conduct" that § 18.2-248 punishes and asks whether that offense involves the conduct described in § 924(e)(2)(A)(ii).  *Hope*, 28 F.4th at 496-97.  As discussed above, Defendant contends that the attempted transfer of a controlled substance represents the least culpable conduct that § 18.2-248 criminalizes.  (Mot. at 7-16.)  And, as further discussed above, both the Fourth Circuit and many of its sister circuits have found that attempt crimes fall within § 924(e)(2)(A)(ii)'s ambit.  *See Williams*, 468 F. App'x at 346-47 (collecting cases).  Because conduct at the outer limit of that which § 18.2-248 punishes — whether it be the attempted transfer of a controlled substance or the aiding and abetting of the distribution of the same — "necessarily entail[s]" the conduct described in the

18

ACCA's definition of a "serious drug offense," the Court finds that § 18.2-248 satisfies the categorical analysis with respect to its conduct element and can properly serve as a predicate offense under the ACCA. *Shular*, 140 S. Ct. at 784.

> ii.   **Because the Court Finds § 18.2-248 Divisible by Substance, and Thus the Modified Categorical Approach Applies, Defendant's Argument that § 18.2-248 Categorically Exceeds the ACCA in Scope With Respect to Its Substance Element Fails**

For his second argument, Defendant asserts that, at the time of his prior convictions, Virginia Code § 18.2-248 included within its definition of controlled substances "[cocaine and heroin] isomers that are *not* included in the federal schedules." (Mot. at 30-31) (emphasis in original). That fact alone, Defendant argues, suffices "to take [Virginia]'s drug statutes outside of the federal predicate definition" when applying the categorical approach. (Mot. at 31.) Defendant turns to the Fourth Circuit's *Hope* decision for support of his argument. (Mot. at 31) (citing *Hope*, 28 F.4th at 504).

Defendant's reliance on *Hope* misleads him, however, because the Fourth Circuit, after finding the relevant South Carolina drug possession statute indivisible by substance, compared *Hope*'s prior convictions against the ACCA using the *categorical* approach. *Hope*, 28 F.4th at 504. In the instant case, the *modified categorical* approach applies, as the Court finds § 18.2-248 divisible by substance (a finding mandated by binding Fourth Circuit precedent). *Cucalon v. Barr*, 958 F.3d 245, 253 (4th Cir. 2020). *Hope* therefore lacks relevance when analyzing Defendant's prior convictions, and the Court finds Defendant's argument relying on the categorical approach unavailing. *Id.*

In *Hope*, Defendant Lamar Hope pled guilty to one count of knowingly possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g). *Id.* at 492-93. At sentencing, the district court found that Hope's prior convictions for distribution of a controlled substance under

South Carolina Code Section 44-53-445 constituted "serious drug offenses" and imposed a
fifteen-year sentence pursuant to the ACCA's mandatory minimum. *Id.* at 493. On appeal, the
Fourth Circuit reversed, finding § 44-53-445 overbroad as compared to the ACCA. *Id.* at 504.

Critically, the Fourth Circuit's reversal rested on its conclusion that § 44-53-445 "is
indivisible as to drug type." *Id.* It flowed from that conclusion that the court would compare
South Carolina's definition of "controlled substance" to the ACCA's definition of the same term
using the categorical approach. *Id.* Under that approach, the Fourth Circuit found that "the
federal drug schedules and South Carolina drug schedules plainly do not match," as South
Carolina's schedule lists dozens of substances not included in its federal counterpart. *Id.* The
Fourth Circuit therefore reversed the district court, holding that Hope's prior state convictions
did not constitute "serious drug offenses" and thus "should not have triggered the ACCA
minimum sentence enhancement." *Id.* at 506-07.

In contrast to the South Carolina statute at issue in *Hope*, the Court finds § 18.2-248
divisible by substance. *Cucalon*, 958 F.3d at 253 ("[W]e conclude that the identity of the
prohibited substance is an element of Virginia Code § 18.2-248 and that the statute is divisible
on that basis."). The modified categorical approach therefore applies when the Court compares
Defendant's prior state convictions to the ACCA's definition of "serious drug offense." *Id.*
Because Defendant's overbreadth argument with respect to drug substances rests entirely on a
categorical comparison between Virginia's drug schedules and the corresponding federal
schedules, which the Court finds inappropriate under *Cucalon*, the Court must reject the
argument wholesale. *Id.* Pursuant to *Cucalon*, the Court takes up the comparison between the
substances identified in Defendant's § 18.2-248 convictions and the federal drug schedules using
the modified categorical approach in Section III.B.iii., *infra*. *Id.*

### iii.   Under the Modified Categorical Approach, Defendant's 2015 § 18.2-248 Conviction Constitutes an ACCA Predicate Offense

For his third and final argument, Defendant contends that, even applying the modified categorical approach, his 2015 conviction under § 18.2-248 for Possession of a Controlled Substance with Intent to Distribute cannot constitute an ACCA predicate offense.  (Mot. at 33.) This final argument hinges on a misapplication of Virginia law, however, and the Court finds that Defendant's 2015 conviction may properly serve as an ACCA predicate offense.

Defendant's final argument proceeds from three factual premises:  First, as discussed *supra*, Virginia's controlled substances schedules include substances not listed in their federal counterparts.  (Mot. at 33.)  Second, Defendant pled *nolo contendere* to the 2014 indictment brought under § 18.2-248 (ECF No. 28-1, ex. C), which alleged that he possessed cocaine with the intent to distribute.  (Mot. at 33.)  Third, the Trial and Sentencing Order (ECF No. 28-1, ex. C) associated with Defendant's 2014 indictment / 2015 conviction makes no mention of the particular substance that formed the basis of his § 18.2-248 conviction.  (Mot. at 33.)  To these factual premises, Defendant adds a fourth, legal premise:  Under Virginia law, a defendant who pleads *nolo contendere* admits to none of the factual allegations contained in the indictment. (Mot. at 34) (citing *Honaker v. Howe*, 60 Va. 50, 54 (1869)).

From here, Defendant argues the following:  Because Defendant pled *nolo contendere* to the indictment and therefore, under *Honaker*, did not admit the truth of the facts alleged therein (specifically, that he possessed cocaine), the Government cannot use the state's indictment to show that Defendant's 2015 conviction falls within the ACCA's definition of a "serious drug offense."  (Mot. at 33) (citing *Alston*, 611 F.3d at 219).  Absent the facts alleged in the indictment, Defendant continues, "the record does not reflect that [Defendant] admitted or the [state] court found that the substance [for which Defendant was convicted] was cocaine as

21

opposed to another Schedule I or II substance." (Mot. at 33.)  Because his 2015 conviction could

therefore conceivably rest on a Schedule I or II substance not included on the federal schedules,

Defendant concludes, the Government cannot now proffer the conviction as an ACCA predicate.

(Mot. at 34.)  In support of this argument, Defendant cites the Fourth Circuit's 2010 decision in

*Alston.* 611 F.3d at 225.

In *Alston*, the defendant in a § 922(g) prosecution appealed the district court's application

of an ACCA sentencing enhancement, arguing that the Government lacked a sufficient factual

basis, using the available *Shepard* documents, to show that his prior state assault conviction fell

within the ACCA's definition of a "violent felony." *Id.* at 222-23.  The Fourth Circuit agreed,

vacating Alston's sentence. *Id.*

Essential to the Fourth Circuit's reasoning was the nature of Alston's prior conviction —

namely, that Alston pled guilty via an *Alford* plea.[4]  *Id.* at 221.  Because Alston pled guilty to the

state assault charge without admitting the prosecution's alleged facts, the Fourth Circuit found

that the district court erred in referencing the prosecution's factual proffer before the state court

to determine whether the earlier conviction constituted an ACCA predicate offense. *Id.*  And

without the prosecution's factual proffer, the Fourth Circuit held, the district court lacked any

---

[4]      In *North Carolina v. Alford*, 400 U.S. 25 (1970), the Supreme Court upheld against
constitutional challenge the trial court's acceptance of a defendant's guilty plea where the
defendant maintained his innocence but pled guilty to avoid the possibility of the death penalty.
400 U.S. at 38.  Alford's plea, the Court held, amounted to a waiver of trial without an admission
of guilt. *Id.* at 32-33.

Alston made a similar "*Alford*" plea when faced with his assault prosecution in Maryland
state court. *Alston*, 611 F.3d at 227.  The prosecution proffered State's witnesses who "were
prepared to testify that Alston pointed a gun at three individuals and threatened to kill them." *Id.*
Though Alston admitted that the State could produce witnesses who would testify as much,
Alston did not admit the truth of the allegations. *Id.*  Rather, Alston "explicitly pleaded guilty
*without* admitting those facts." *Id.* (emphasis in original).

*Shepard*-approved document showing that Defendant's earlier conviction "necessarily rest[ed] on facts establishing his participation in a type of assault that qualifies as a violent felony." *Id.*

Though Defendant draws a straight line from *Alston* to the instant case, *Alston*'s holding bears little relevance given the effect of a *nolo contendere* plea in Virginia. *Commonwealth v. Jackson*, 499 S.E. 2d 276, 279 (Va. 1998). Defendant contends that, pursuant to *Alston*, his 2015 conviction for Possession of a Controlled Substance with Intent to Distribute cannot serve as an ACCA predicate where Defendant pled *nolo contendere* and the only document that identifies the substance for which Defendant was prosecuted is the indictment. (Mot. at 34) (citing *Honaker*, 60 Va. at 54). Defendant's argument, however, rests on an incorrect understanding of Virginia law, and the Court therefore must reject it. *Jackson*, 499 S.E. 2d at 279.

Defendant reasonably interprets *Honaker* to stand for the proposition that, under Virginia law, a defendant who pleads *nolo contendere* does not admit the facts charged in the indictment. *Honaker*, 60 Va. at 53 ("[T]he plea of *nolo contendere* . . . is not understood as an acknowledgement of the fact charged. The entry in such a case imports merely, that the defendant is willing and desirous, if the court will allow it, to pay a small fine in order to get rid of the prosecution."). Defendant conveniently omits, however, the Virginia Supreme Court's subsequent interpretation of *Honaker* 129 years later in *Commonwealth v. Jackson*, 499 S.E. 2d 276, 278 (Va. 1998). There, Virginia's high court interpreted *Honaker* to stand for the proposition that "by entering a plea of *nolo contendere*, the defendant 'implies a confession . . . of the truth of the charge . . . [and] agrees that the court may consider him guilty' for the purpose of imposing judgment and sentence." *Id.* at 278 (quoting *Honaker*, 60 Va. at 53).

While Defendant may read *Commonwealth v. Jackson* as buttressing, rather than undermining, his interpretation of *Honaker*, the Fourth Circuit has approvingly cited to *Jackson*

23

for the proposition that, under Virginia law, a defendant who pleads "no contest" admits the facts

alleged in the charging document. *United States v. Davis*, 679 F.3d 177, 186 (4th Cir. 2012)

(contrasting Virginia law with North Carolina, where "a defendant who pleads 'no contest' does

not admit any facts alleged in the charging document").

Moreover, both the D.C. Circuit and the Fourth Circuit (in an unpublished opinion) have

interpreted *Jackson* to cut directly against *Honaker*, explicitly stating that a Virginia defendant

who pleads *nolo contendere* admits the facts charged in the indictment. *See United States v. De

Jesus Ventura*, 565 F.3d 870, 879 (D.C. Cir. 2009) ("In Virginia, a defendant who pleads nolo

contendere admits only the truth of the charge — that is, the crime charged in the indictment.");

*Cruz*, 469 F. App'x at 167 ("[U]nder Virginia law[,] a defendant [convicted by plea of nolo

contendere] expressly admits the facts alleged in the information.").

Based on the Fourth Circuit's understanding of Virginia law, as expressed in *Davis* and

*Cruz*, the Court interprets Defendant's *nolo contendere* plea to the 2014 indictment for

Possession of a Controlled Substance with Intent to Distribute as an admission of the facts

alleged in the indictment. *Davis*, 679 F.3d at 186; *Cruz*, 469 F. App'x at 167. Specifically, the

Court interprets the *nolo contendere* plea as an admission that Defendant possessed cocaine with

intent to distribute.

With the import of Defendant's 2015 conviction now clear, the Court can return to the

legal framework described *supra* in Section III.A. At Step Zero, the Court finds Virginia Code

Section 18.2-248 divisible by substance in accord with binding Fourth Circuit precedent.

*Cucalon*, 958 F.3d at 253. Defendant's 2015 conviction under § 18.2-248 thus implicates a

modified categorical analysis. *Id.* at 250.

Under the modified categorical analysis (Step One), the Court must consult the relevant *Shepard* documents from Defendant's state conviction to "determine[] the elements of the crime of conviction." *Id.* Specifically, the Court looks to the charging document and plea agreement to determine what substance(s) formed the basis for Defendant's conviction. *Id.* Defendant's *Shepard* documents unambiguously identify the relevant substance; the Indictment associated with Defendant's 2015 conviction alleges that Defendant "did feloniously and unlawfully manufacture, sell, give or distribute *cocaine* . . ." (ECF No. 28-1, ex. C) (emphasis added). Thus, Defendant's state offense consists of two elements: (1) the manufacture, sale, giving or distribution of (2) cocaine.

Finally, at Step Two, the Court concludes the analysis by "compar[ing] the elements of the state offense with the criteria that the ACCA uses to define 'a serious drug offense.'" *Hope*, 28 F.4th at 496 (citing *Shular*, 140 S. Ct. at 780). If the elements of the state offense are "as narrow as or narrower than the federal statute['s]" elements, then the ACCA applies. *United States v. Jones*, 2021 WL 2582821, at *2 (W.D. Va. June 22, 2021). Because the Court addressed § 18.2-248's conduct element *supra* in Section III.B.i. and found that all three of Defendant's § 18.2-248 offenses "necessarily entail[ed] one of the types of conduct" set forth in the ACCA's definition of "serious drug offense," the "sole inquiry of the court is to determine whether [Defendant's] . . . [2015] conviction[] identif[ies] a substance also listed under the federal statute." *Id.* at *4. And indeed, Defendant's 2015 identifies cocaine, a substance also listed in the Controlled Substances Act. 21 U.S.C. § 802. Defendant's 2015 conviction therefore

constitutes a "serious drug offense" pursuant to the ACCA's definition, and the Government

properly identified the conviction as a predicate offense.[5]

---

[5]      The Fourth Circuit's 2020 decision in *Cucalon v. Barr*, though not directly on point, supports the Court's conclusion. 958 F.3d at 248. *Cucalon* concerned whether § 18.2-248 qualified as a crime "relating to a controlled substance" as defined by the Immigration and Nationality Act (INA). *Id.* In answering that question affirmatively, the Fourth Circuit first found § 18.2-248 divisible by substance and thus subject to the modified categorical approach. *Id.* at 253. The *Cucalon* court then looked to the defendant's state court *Shepard* documents and found that he pled guilty "as charged" to an indictment for distribution of cocaine as an accommodation. *Id.* Finally, conducting a categorical comparison between § 18.2-248 and the INA, the Fourth Circuit found that because Schedule II (the schedule that the INA references in its definition of "controlled substance") lists cocaine as a controlled substance, Cucalon's earlier conviction qualified as a crime "relating to a controlled substance." *Id.*

The Western District of Virginia decided a case similar to the instant one in *United States v. Jones*, 2021 WL 2582821. There, the defendant argued that his prior convictions under § 18.2-248 for selling cocaine did not qualify as predicate offenses under ACCA, because Virginia's drug schedules include isomers of cocaine not included in the corresponding federal schedules. *Jones*, 2021 WL 2582821, at *3. To distinguish his case from *Cucalon*, the defendant noted that *Cucalon* did not address the merits of the isomer argument, which was raised only in the defendant's reply brief in the earlier case. *Id.* The Western District rejected Jones' argument, holding that because Jones' state court convictions listed "cocaine" rather than "a cocaine isomer," Jones' argument was one of "legal imagination." *Id.* (quoting *United States v. Battle*, 927 F.3d 160, 164 (4th Cir. 2019)). The same could be said for Defendant's arguments regarding isomers in the instant case. (Mot. at 30-32.)

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Establish Statutory Maximum and Mandatory Minimum (ECF No. 28) will be GRANTED IN PART and DENIED IN PART.  The Court GRANTS Defendant's Motion to the extent that Defendant moves for a pre-trial determination of whether the ACCA applies.  The Court DENIES Defendant's Motion to the extent that Defendant seeks a determination that the ACCA does not apply.

An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date:  September 26, 2022